Anderson, J.
delivered the opinion of the court.
A chancery suit w7as brought in the Circuit court of Rockingham county, in the year 1856, by the widow and heirs of Abraham Beery, for a partition of the lands, of which he died seized. The record of the suit has been lost or destroyed, or burned up, with the other records of the court, and w7e have only secondary evidence of what was done. There was a decree for the sale of thé land, and the sale was made in February 1857, by John C. Woodson, who was appointed a commissioner for the purpose ; which sale was reported to and confirmed by the court. The terms of the sale-were, one-third down, and the residue in five equal annual instalments. A. B. Iriek, the appellee, in connec *620 tion with one Stevens, whom he afterwards bought out, was the purchaser, at the price of $12,437.08.
This suit was brought by the widow and heirs, to recover what is still due them of that fund, and to subject the land to its payment.
The original suit having been brought for partition by sale, it was one of the first duties of the court to determine what should be the widow’s share in the proceeds. That was precedent to a partition among the heirs. They allege, and the commissioner proves, that one of the terms of the decree was, that one-third of the purchase money should be set apart, the interest on which 'should be paid annually to the widow, during her life, in lieu of dower; a disposition which seemed to be satisfactory to all parties concerned.
Accordingly an agreement seems to have been made between the widow and heirs and the purchaser, with the sanction of the commissioner, that he should pay the two-thirds of the cash payment, and of the deferred payments, to the heirs, as they were respectively due, and retain in his own hands the remaining one third ; and to pay interest thereon annually to the widow, during her life ; the same to be secured, together with the deferred payments to the heirs, by a lien upon the land. Irick in his answer says, that he purchased at the sale, “ under the impression, and from statements made by the commissioner, that one-third of the purchase money could be retained during the life of the widow ; that such were not the terms of the sale, but that it was likely such an arrangement could be made.” And it seems that such an arrangement was made. .The down payment with interest from the date of sale to the 8th of May 1857, when it was payable, amounted to $4,203.73. Of this sum, he paid only two-thirds—the part coming to the heirs; and for the remaining third, gave his bond, the interested! which the widow was entitled to. For each of the deferred payments he gave two bonds, one *621 for $1,105.52 for the heirs ; and the other for $552.76, on which interest was to be paid annually to the widow. And it appears that he paid up regularly to the heirs their portion, as the bonds fell due, and the interest annually, to the widow until May 1862, upon the bonds set apart as a fund for her. Commissioner Woodson proves, that Irick generally made payment to the heirs, took their receipts and the widow’s receipt for the interest, which he brought to him, and took up the bonds, and was credited for the interest paid to the widow. He also testified that he never considered that he had any control of the principal of the part set apart for the widow, “ or that he had any right to collect the same, or in any way to interfere with it or control it, and never did.” Why would he not have had the right to collect it, if there had not been an agreement, as is alleged, as to the investment ; or a decree to that effect ?
The court is of opinion, from the adjustment made hy the commissioner, and the widow and heirs, with the purchaser ; from the subsequent acts of the parties, and from the testimony of the commissioner, that it was mutually agreed by them all, or so provided by the decree, that one-third of the purchase money should remain in the hands of the purchaser, during the life of the widow, as an invested fund, secured by a lien upon the land, the interest on which was to be paid to her annually, in lieu of dower.
It appears from the record, that all parties were satisfied with this arrangement, and that no change was desired, until October 1862. The circulating medium had then become greatly inflated, by the liberal issue of Confederate treasury notes, and had become greatly depreciated, rating at 2 J for 1 in relation to gold as the standard. It was then that Mr, Irick conceived the idea of relieving himself of this indebtedness, by discharging his obligations in this depreciated currency.
ne did not propose it to the widow or heirs, the only *622 persons besides himself who were interested, to whom he had been making the payments theretofore; and with' ' whom his agreement to retain the fund had been made. They had the right to receive it, if they were all willing and were sui juris. Hor did he apply to Commissioner "Woodson to receive it. It seems that Woodson was authorized to collect the other bonds, and the interest on the widow’s fund, and needed no further order of court to confer on him that authority. Why could he not in like manner collect the other bonds for the purchase money, which bad not hitherto been collected, but only the interest annually for the widow, if there had been no agreement or provision of the decree, inhibiting their collection, and placing them on a different footing from the other bonds ? The fact that the appellee deemed it necessary to apply to the court for an order, shows that he did not consider that he had a right to pay it without such order, and consequently was restricted in his right to pay, by his agreement with the other parties, or by a provision in the decree. He does not pretend that he applied to the commissioner to receive payment. But he says that he paid the fund to the receiver of the court, under an order of the court. He does not seem to have thought that he could pay it to the commissioner who was authorized to receive payment of the other bonds, and of the interest for the widow ; but says in his deposition, “ I gave the papers to Mr. Woodson, whom I presumed would attend to it; or rather Mr. W oodson had the papers, bonds, &c., and said (he does not now presume) he would attend to the matter before the court.” But Mr. Woodson does,not seem to recollect any thing about it. He says he has no recollection of being at the Circuit court for Rockingham, either in May or October 1862 ; and has no recollection of what was done at those courts. And Henry C. Beery testifies, that he asked Mr. Irick, whether he had consulted Mr. Woodson on it, and he told him that he had not. It *623 may have been the impression of Mr. Irick, that he had applied to Mr. Woodson to attend to getting the order for him : but he seems not to have had a distinct recollection when he gave his deposition ; and the other evidence shows that he was probably mistaken. It is very evident that the motion in court was not made by Mr. Woodson. By whom it was made does not appear. It is not material in the decision of the cause to know ; but in some aspects of the cause, it might have been [to the advantage of Mr. Irick to have shown
But of this there is no doubt, that the motion was made without notice to the widow and heirs; and that the order directing him to pay the money into the hands of the receiver of the court, was made not only without their consent, but without their knowledge. The widow seems to have known nothing of it in May 1863. She then sent to him for her interest. When asked for it by her agent, he inquired of him if he would receive Confederate money. Being answered in the negative, he did not even then inform him that he had paid the principal and interest to the receiver of the court, under its order, but suffered him to leave him under the impression, from what he said, that he still held the fund. And the widow and some of the heirs seem not to have been better informed (and it does not appear that any of them were), until after the termination of the war. There may have been no design on the part of the appellee to conceal the fact from the widow and heirs. And his withholding it from the agent of the widow, when he ought to have known that he was ignorant of it, may have been from want of reflection, and not from a design to withhold from the widow and heirs information which might lead to the institution of proceedings to undo what had been done. The court would be slow to believe that the order of court had been surreptitiously obtained; yet they cannot be blind to the proofs in the cause, which look that way, though not deemed suffi *624 eient to justify the imputation. But it is evident that the appellee obtained the order upon an ex parte motion,, without the consent or knowledge of the widow and 0 heirs, and without notice to them; and that they had n0 opportunity to resist the motion, which they doubtless would have done, and successfully, if they had had notice of it.
The court is of opinion, whether the investment of the widow’s fund, as stated, was made by the decree of the court, or by the agreement of the parties, that no-subsequent order upon the motion of the debtor, who-was not a party to the suit, changing that investment, is binding upon the widow and heirs, unless made by their-consent, or upon notice to them. TJpon one hypothesis it was to set aside a decree of the court; upon the other, it was to rescind an agreement—neither of which could be done on motion without notice.
The court is, therefore, of opinion that the order of the court authorizing the debtor, on his motion, to change the investment of the widow’s fund and to pay it to the receiver of the court, being made without the-consent of the widow and heirs, or notice to them, is-not binding on them and cannot discharge the appellee from his obligations, or release the land from the vendor’s lien.
The court is further of opinion that the payment made-by the appellee to the receiver, being under an order of court which is null and void as to the widow and heirs, the relation of the debtor to them is as if such payment had not been made; and their right of action to have and demand the same of their debtor is direct and immediate, and no question as to the liability of the receiver-can be interposed to impede its assertion. The liability of the receiver, or the extent of his liability, are questions between him and A. B. Iriek; and do not concern the appellants. But whilst this is so, the receiver, having been made a party to this suit, if he is liable to Trick, *625 the latter might have had a decree over against him, if he had asked it. But the court below has not passed upon the question of the receiver’s liability to Irick, and has not been asked to do so. It would seem to be most proper, therefore, that this court, which has only appellate jurisdiction—though in a proper ease it might do so—should not undertake, primarily in the state of the pleadings in this case, to decide upon their reciprocal rights and liabilities; but the parties should be allowed, when the cause goes back to the lower court, to litigate those matters, if they think proper, before that court, that the respective rights and liabilities of the said parties as to each other may be settled and determined in this suit.
The court is of opinion that so much of the decree of the Circuit court, of November 23, 1867, as dismissed the plaintiffs’ bill, so far as it seeks to charge A. B. Irick and M. IT. Effinger with liability for the sum of $4,269.89, paid by the said Irick under the decree of October 1862, to the receiver and invested by him in Confederate States bonds, is erroneous, and that the Circuit court did not err in granting the plaintiffs leave to file their bill of review.
And the court is further of opinion, for reasons already stated, that the decree of the 25th of November 1870, is erroneous in re-affirming the decree of November 23d, 1867, and in dismissing the bill of review; and that the same, as also the decree of the 23d of November 1867, so far as it dismisses the bill against Irick and Effinger, must be reversed.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the order of court of October 1862, authorizing A. B. Irick to pay to the receiver of the court the fund in his hands, which had been set apart for the widow of Abraham Beery during her life, *626 upon w'hich she was to receive the interest annually, in lieu of dower, was not binding on the widow and heirs, but was null and void as to them ; and that the payment made by the saidaIrick to the receiver of the court, under said order, does not discharge his obligation to the.w'idow and heirs, or release the land from the vendor’s lien-; and that the appellants are entitled to a decree against the said Irick for the principal of said bonds which had been set apart for the widow, to be safely invested by the court during the lifetime of the widow : and that she is also entitled to a decree against him for the interest which ispn arrear and unpaid upon said bonds, subjecting the land to the payment of both principal and interest with a proviso, that if the said Irick shall pay up the interest due and in arrear to the widow in a reasonable time, to be designated by the Circuit court, and shall pay the balance which the said court may ascertain to be due on the bonds, which were set apart for the heirs, and shall execute his bond for the principal sum w'hich was set apart as a fund for the lifetime of the widow, and punctually pay the interest accruing thereon annually, to the widow7 during her life, then and in that case the execution of said decree requiring the pa/meut of the principal sum aforesaid set apart for the widow7, shall be suspended during her life and for six months after.her death, but shall be a charge upon the whole land, for which the said debt, as a paid of the purchase money, was originally contracted by the said Irick.
It is, therefore, decreed and ordered by the court, that the decree of November 28, 3867, so far as it dismisses the plaintiffs’ bill against Irick and Effinger, and the decree of November 25, 1870, re-affirming said decree and dismissing the plaintiffs’ bill of review, be reversed and annulled ; and that the appellee, Irick, pay to the appellants their costs expended in the prosecution of their appeal here. And the cause is remanded to the Circuit court of Augusta county, to be proceeded w7ith in con *627 formity to the principles of this decree; in which proeeedings the said Irick and Effinger, or either of them, if they, or he, desire it, may litigate the question of liability of the latter to the former, and the extent of such liability, if there be any, to be settled and determined by the said Circuit court, and to be decreed accordingly. Which is ordered to be certified to the said Circuit court of Augusta county.