Anderson, J.
delivered the opinion of the court.
Appellant’s bond for $3,486.79J, executed to A. L. Nelson and William J. Nelson, commissioners, bearing date February 29, 1860, fell due the 1st of April 1863. It was executed for the last instalment on a tract of land which was sold to appellant on the 29th of February 1859, under a decree of the Circuit court of Augusta county, in the cause of Nelson’s guardian, against Nelson’s infants, and which was confirmed at the June term 1859. The appellant paid $2,000 on this bond on the 10th of April 1863. And, in the month of June following, presented a petition to the Hon. Lucas P. Thompson, judge of the said Circuit court, in which he alleges that he is prepared to comply with the contract on his part by paying up the whole purchase money due on said land, there being about $1,500 due yet, but the commissioners positively refused to receive the money, but require him to keep it unproductive in his hands, and to account for the interest which he alleges is in contravention of the contract and the decree, and grievously unjust to him; *733 and he prays that said commissioners shall be required to receive the money, or some other receiver be appointed to receive it, and that when paid, a deed shall be made to him as provided in the contract.
Certainly the debtor had a right to pay his debt after it was due, and it being a debt contracted with commissioners of the court, and payable to them, they were under the control of the court, and if they refused to receive payment, in compliance with the contract, the court had power to compel them to receive payment, or to order the money to be deposited with the general receiver to the credit of the cause; and upon a certificate of the deposit being filed with the papers in the cause, to order that the commissioner, who was appointed for the purpose, should make a deed of conveyance to the purchaser; and such was the orderjnade by the court.
In execution of said order, the appellant tendered the balance due in Confederate treasury notes, which the commissioners refused to receive. He then deposited them with the bank, as the general receiver of the court, which gave him a certificate to the effect that he had deposited $1,520 in the treasury notes of the Confederate States to the credit of said cause, which would be invested by the bank in 7 per cent. bonds of the Confederate States; and stating that the bank had given the certificate in that form, “ because of a notice served upon the bank by John B. Baldwin, Esq., counsel for R. R. Nelson, &c., (filed with the papers in the cause,) forbidding the receipt of Confederate treasury notes, and is intended to charge the bank only with the payment of Confederate States treasury notes, or the Confederate bonds, in which they may be invested.” The said treasury notes were then depreciated to nine for one in gold.
*734 There is no error apparent on the face of the decree, and no exception is taken to it by the appellees, and it could not be done in this collateral proceeding. The on¡y question is as to the execution of it. It is contended by counsel for appellant, that the decree viewed in the light of surrounding circumstances, and of the fact which may be judicially known, that at the date of the decree, Confederate currency being the only currency used as the medium of exchange in the ordinary transactions of the country, the decree must be construed as intended to authorize payment to be made in that currency.
Confederate treasury notes were never made a legal tender in payment of debts; and it was not in the power of the courts, as that eminent judge was well aware, to authorize a debtor to pay off a specie debt, or to compel a creditor to receive payment, against his will, of a specie debt, contracted before the war, in a depreciated Confederate currency, worth only when first tendered five and a half, and when deposited with the receiver only nine, for one in gold. The petition of the debtor does not ask that he may be allowed to make payment in that depreciated currency. He makes no offer in his petition to pay in Confederate treasui’y notes, or any allusion to that currency; but says he is prepared to comply with his contract by paying up the whole of the purchase money due upon said land. It was a contract in effect to pay in specie, and a preparation to pay in that depreciated currency was surely not a preparation to comply with his contract. What he asks for in his petition he was entitled to. And the decree awards it to him. But it does not authorize him to make the payment or tender payment in the depreciated currency then prevailing, which the obligees had positively refused to receive, and which *735 it was not in the power of the court to require them to do, and which we have seen his petition does not in terms propose. But it only authorizes him to pay his ■debt, which he had a clear right to do, and upon the payment in full, to receive a conveyance of title to the land. But the decree does not decide the question, if that was before the court, in what medium it shall be paid. It could not be intended by the decree, to authorize the debtor to pay in a medium, or to compel the creditor to receive payment in a medium, which the contract did not authorize or require, or which it was not in the power of the court to do. It will not be presumed that the court intended to do what was forbidden by law, and what it had no power to do, and of which the eminent judge was as well aware as is this court, when it is not so expressed or imported by the terms of the decree. It was doubtless known to him, that Confederate currency was at the time the only circulating medium of exchange; and he may have been aware that the petitioner contemplated making payment in that currency. But as he had not proposed it in his petition, but only to be allowed to make payment in compliance with his contract, which he was clearly entitled to do; and as no question had been raised by the petition as to the medium of payment, or by any pleading or proceeding in the record, he may have deemed it most proper to award to the petitioner what he asked for in his petition, and what he was entitled to, and not to pass upon a question which was not raised by the petition, but which would more properly he raised upon the proceedings in execution of the order. The question appears not to have been raised in the execution of the order, or brought to the attention of the court until it was raised by the rule upon which the decree *736 was pronounced, which is now appealed from; and it does not appear that Judge Thompson ever passed upon it. It might have been raised by the bank as. general receiver, and ought .to have been raised and submitted by it to the court when it was notified by the creditor not to receive Confederate currency in payment; and the bank was not justified in receiving the Confederate treasury notes as the general receiver of the court until the question as to its receivability had been submitted to and passed upon by the court. And so it may be said the question might have been and ought to have been submitted by commissioner Trout to the court before he executed the conveyance, as the certificate showed upon its face that payment had been received in Confederate treasury notes by the general receiver against the protest of the parties to whom the payment was due. The court is therefore of opinion that the question not having been passed on by Judge Thompson in his decree, was still an open question, and that there is no error in the decree of the Circuit court of Augusta county of the 14th day of October 1874, and that it be affirmed.
Decree arrirmed.