ANDERSON, J.,
delivered the opinion of the court.
At the October term, 1857, of the circuit court of Surry county, a decree was pronounced in a chancery cause therein depending, wherein Henrietta E. Jones, the widow of Boling Jones, deceased; William C.. Jones, *277 a brother and legatee of said decedent, and William E. B. Ruffin, his executor, were parties plaintiff, and the other heirs and distrib - utees of said decedent, some of whom were infants, *were defendants, directing the sale of a tract of four hundred and eleven acres of land, which said decedent, by his last will, devised to his wife, the said Henrietta, for and during her natural life, and which he directed to be sold at her death, and two-thirds of the proceeds of sale to be paid to his brother, the said William C. Jones. He also gave a legacy of $2,509 to his niece, Minerva E. Peg ram, to be paid at the death of his wife, the said Henrietta, which it seemed to be understood by all the parties was to be paid out of the sale of the land. The residue of the proceeds of the sale of the land, if any, was undisposed of by the will.
The said decree seems to have been made in a friendly suit for the sale of the land, in accordance with the wishes of all the parties, and in which the infants answered by guardian ad litem, and in fact could not have been sold then, except by agreement of the parties in interest, as the will provided for its sale only at the death of the widow. The sale was made by W. E. B. Ruffin, the executor, who was appointed a commissioner fer the purpose; and the said William C. Tones became the purchaser, at the price of $4,000. By the terms of the decree the sale was on a credit of one, two and three years, with interest from day of sale, except a sum sufficient to pay costs, which was to be paid in cash.
The sale was reported by the commissioner to the court, and at the October term, 1859, was confirmed; and the court, being of opinion that it was unnecessary at that time to dispose of the principal of the proceeds of the sale of the land, adjudged, ordered and decreed that Commissioner Ruffin collect the interest now due on said bonds, and thereafter, from time to time, as the same becomes due, and pay the same to the plaintiff H. E. Jones, and make report to court of his proceedings thereon. But before proceeding to execute said decree, he was required to execute bond, with good security, in the penalty of $500, conditioned *for the faithful performance of his duty under said decree. And the said commissioner executed a bond in the penalty of $500, conditioned for the faithful performance of his duty under said decree, which was, as is recited, to collect the interest then due and the interest thereafter to become due, &c.
At the May term, 1861, by consent of parties, it was decreed that Robert H. Whitfield be appointed a commissioner in the place of William E. B. Ruffin, who was then deceased, to collect the interest, upon executing a bond similar to the one required of said Ruffin.
No other order seems to have been made in the cause until the 11th of May, 1863, when W. S. Underwood was appointed a commissioner to collect the bonds, and to invest the same in interest bearing bonds or certificates of the Confederate States or the state of Virginia, or any other sufficient bonds or securities of or within the said state, and to return the said bonds, with a report of his proceedings, to the court. And said commissioner was ordered, upon payment of said bonds by the purchaser, to convey the land to him with special warranty. But said commissioner, before entering upon these duties, was required to give bond in the penalty of $8,000. Said commissioner afterwards reported to the court that he had collected the bonds, amounting, May 13th, 1863, to $3,887.85; that he had invested $3,700 ia a bond of the Confederate States, bearing seven per cent, interest from June 29th, 1863 — leaving a balance, after paying expenses, of $91.10 in his hands, subject to the order of the court.
On the 27th of October, 1863, there was a decree of the court confirming said report, and directing the commissioner to pay the said sum of $91.10 to Henrietta E. Jones, taking her bond, and security from her, to return it upon the termination of her life, and to file the bond so taken with the papers in the cause. And further to transfer and assign to her for life the bond of thirty-seven hundred *dollars, upon her giving bond and sufficient security to account for the same, or the proceeds thereof, to the parties entitled upon the termination of her life, and to report his proceedings to court. And the said commissioner made report co the court, under said decree, that he tendered to Mrs. H. E. Jones, through her agent, Col. Jas. S. Clark, the bond of the Confederate States for $3,700, in the said decree mentioned, and also ninety-one dollars and ten cents in Confederate treasury notes, and that she refused t<5 accept the same or either, and that the said bond, and the said sum of $91.10, is filed in the papers of this cause in the clerk’s office of said court. There is no date given to this report, nor any entry made showing when it was returned.
Commissioner Underwood seems to have acted very promptly in executing all the previous orders of the court, and no reason appears why he should have been dilatory in the performance of this order; but there is good reason why he should have acted promptly in this instance too, and not have postponed the execution of this order. The Confederate bond and treasury notes were in his hands, and were depreciating every day, and it is natural that he would be desirous to be relieved from the responsibility of holding such securities, and indeed he might have incurred responsibility by holding them up and delay in executing the order of the court. It is most probable that the tender was made and refused soon after the decree of October, 1863, was pronounced; and this conclusion is very much confirmed, as we shall see. by the testimony of R. H. Whitfield.
No other order seems to be made in the case until the 11th of May, 1866. On that day John R. Purdie, and Henrietta E-, his wife — Henrietta E. Jones that was — a plaintiff in this cause, by leave of the court, filed their petition for a rehearing of the cause, *278 and praying that said decrees may be reversed and set aside. And on the same day they excepted to the report of the commissioner, that *he had “collected the bonds he was directed to collect by decree of May term, 1863, in Confederate treasury notes, which said decree did not authorize.”
It is true that the decree does not expressly authorize him to collect the bonds in Confederate currency, but it authorizes him, when collected, to invest the fund in interest bearing bonds or certificates of the Confederate States. The commissioner in his report does not say expressly that he received payment of the bonds in Confederate treasury notes, but he says that he invested what he received, after paying expenses, in a bond of the Confederate States, except $91.10, which the commissioner says, in a subsequent report, he tendered to Mrs. Henrietta Jones in Confederate treasury notes. There can be no doubt that the commissioner received payment of the bonds in Confederate depreciated currency, and that in so doing he did not go counter to the order of the court. It was evidently the intention of the court to authorize a change of the investment to a Confederate security, and to allow the purchaser to discharge his obligations with Confederate currency, which would be available in the purchase of Confederate bonds; and that the action of the commissioner was in conformity with the order of the court. And the question is, was said order erroneous, and ought it to have been reversed and set aside upon the plaintiff’s petition?
Mrs. Henrietta Jones, now Mrs. Purdie, had only a life estate in the land,' and consequently in the proceeds of the sale. The purchaser, Wm. C. Jones, was entitled to remainder, at her death, to two-thirds .of the purchase money, and other parties 'to the suit, and the said Wm. C. Jones, inclusive, were entitled to the balance at the death of the life tenant. The decrees of October, 1859, and of May, 1861, which authorized the. commissioner to collect only the interest, were doubtless in accordance with the wishes of the purchaser, and of all who were interested in the remainder. Such a decree could only have been made with *the consent of the purchaser, who had a right,.under his contract, to pay the purchase money as it fell due. But he doubtless regarded it as favorable to himself, that he was permitted to retain the principal, and required to pay only the interest, especially as two-thirds of it were his at the death of the life tenant. And we may infer that the dcree allowing the purchaser to retain the principal, and requiring and authorizing only the interest to be collected, was made pursuant to a friendly arrangement and understanding between all the parties. Por, from the first it was a friendly suit between them all, and the counsel who conducted it for them, Messrs. Graves & Whitney, were counsel for all, and neither of them were counsel for one adversely to another. And doubtless all the proceedings in the cause, up to the 10th of May, 1861, were pursuant to the understanding and agreement of all, and most probably would have been adhered to by all but for the change which took place in the monetary affairs of the country.
In May. 1863, the court made a decree, changing the arrangement, that only the interest of the purchase money should be collected, and appointed W. S. Underwood a commissioner, and required him to collect the principal.
In the decree of October, 1859, the court gave as a reason for requiring only the interest to be collected that, in its opinion, it was unnecessary at that time to dispose of the principal. There was no more necessity for it in May, 1863. The life tenant was still living, and there could be no distribution of the fund to those entitled in remainder. The court does not intimate any change of opinion, or assign any reason for changing what seemed to have been the arrangement agreed upon by the parties themselves. But Mrs. Henrietta Purdie avers in her sworn petition that said decree was obtained without her knowledge or consent, “and that it was obtained by counsel employed by the purchaser, William C. Jones, for the sole purpose of discharging his said bonds in Confederate money, *then largely depreciated; being then worth, as compared with gold, six for one.” This averment is proved by the testimony of Robert H. Whitfield, who testified that the said Underwood told him that he was employed as counsel by William C. Jones, to move the court for leave to pay off his bonds given for the price of the land. Said Underwood had not been employed as counsel before in this friendly suit, and was then brought into the cause by William C. Jones for this belligerent purpose. I have treated the affidavit of R. H. Whitfield as testimony in the cause, as it was relied on as evidence in the court below, without exception; and it fully sustains the material allegations of the petition. It is true, as before remarked, that a debtor has a right to pay his debt when it is due. But he has not a right to pay a debt, which he contracted for in specie, with depreciated paper currency, without the consent of the party to whom’ it is due. And it was error in the court by the decrees of the 11th of May and 27th of October, 1863, to change the arrangement which bvl evidently been made by the parties, to the effect that the purchaser, William C. Jones, should retain the principal of the purchase money in his hands, and pay the interest annually to the life tenant, without notice to her — an arrangement upon which she was evidently relying, and which was evidently the foundation of that provision in the decrees of 1859 and 1861, and which had been acted on and carried out, up to the said 11th of May, 1863; and especially was it error to authorize the debtor to pay a specie debt in a paper currency so depreciated that six dollars of it were worth only one of gold, the medium in which, by the contract, the debt was payable, without the consent of the life tenant, and further to require her to receive it, nolens *279 voleas, and to give bond and security that it should be returned after her death to William C. Jones and the other parties to whom it would be due. And not only so, but to allow her to receive the interest then accrued, which *was absolutely hers, only upon condition that she would execute her bond, with security, for its return to them after her death.
It is contended that inasmuch as she did not except to the report of the commissioner setting out that he had received payment in confederate currency, and had invested $3,700 of it in a Confederate States bond, that she cannot in the appellate court object to it, or that it was too late for her afterwards to object to it in the same court. She did except to it, it seems, as soon as she could, after she was informed of it, in the court below. But it seems to me that was unnecessary. The report of the commissioner shows that he acted pursuant to the decree. If there was no error in the decree, there was none in his report. But the fault was in the decree; and if that was wrong and invalid, the actings and doings of the commissioner in its execution could be of no value, and must fall with it; and in order to avail herself of any illegality in the decrees, it was not necessary that she should have excepted to them. It was competent for her to have impeached them, if they were interlocutory, by petition, or if they were final, by bill of review, though she had previously taken no exception to them. It was in time for either.
The decree of October, 1863. was not final, but interlocutory. It effectuated nothing more than was done by the decree of 11th of May of thesameyear, exceptthatit confirmed the report of the commissioner of what he had done underthe formerdecree. True it directed him how to dispose of the Confederate security, in which he had invested most of the fund, and the uninvested portion of the fund which he had received from the purchaser in Confederate treasury notes. But those provisions of the decree were conditional, and proved ineffectual and nugatory, as Mrs. Henrietta Jones was unwilling to comply with the condition upon which they depended, as was shown by the report of the commissioner returned to the *court, and it was not in theprovince of thecourtto coerce her. The disposition of those securities consequently remained to be provided for; and the further action of the court was as necessary to dispose of them subsequent to the decree of October, 1863, as it was before. That decree was, therefore, not final, as this important matter, as well as the question of costs, were not finally disposed of by it. And the court did not regard it as final, but evidently had further action in contemplation, as it required the commissioner to report his proceedings under that decree to the court; which he did, though his report had not been acted on when John R. Purdie and wife filed their petition for a rehearing of said decrees of 1863 with the affidavit of R. H. Whitfield, on the 11th of May, 1866.
On that day a decreetal order was entered in the cause, recognizing the marriage of the plaintiff, Henrietta E. Jones, with John R. Purdie, and the filing of their said petition by leave of the court, and suggesting the death of W. E. B. Ruffin, and it was ordered that the suit be continued in the names of John R. Purdie and Henrietta, his wife, and of William J. Ruffin, executor of W. E. B'. Ruffin, and the heirs of the said W. E. B. Ruffin.
On the 11th of May, 1867, the death of William C. Jones having been suggested, it was ordered that this cause proceed in the names of J. B. Jones and Charles P. Jones, his executors, and in their own right, of Mary Jones, widow of said W. C. Jones, and the heirs of said William C. J ones who are named.
At the October term, 1867, the following order was entered:
This cause came on this day to be again heard on the papers formerly read, and proceeding to consider the petition of Purdie and wife, heretofore filed in this cause, praying for a rehearing of this cause and the reversal of the interlocutory decrees herein of May and October terms, 1863, and being of opinion that there is sufficient matter ^referred to and stated in said petion to authorize a review and examination of the said interlocutory decrees, it is considered by the court, and thereupon ordered, that the prayer of said petition be granted, and the cause reheard; and for such purpose, without deciding any principle in the case remaining undecided, the cause is continued, to be again heard.
A paper purporting to be a certificate of Mary, widow of William C. Jones, the clerk certifies was found filed among the papers in the cause. How it got amongst them, or when it was filed, it does not appear. It is acknowledged before a commissioner in chancery on the 30th of April, 1873, but is not sworn to, and it is presumed was not filed anterior to that date.
At the October term of the court, 1873, the following decree was entered:
This cause came on this day to be reheard on the papers formerly read, and was argued by counsel: on consideration whereof, the court doth adjudge, order and decree that the petition of John R. Purdie and wife be dismissed, and that said Purdie and wife pay the costs of said petition, and that the unpaid costs accrued up to the filing of said petition be paid by the executors of W. C. Jones, deceased.
This appears to be the first final decree entered in the cause, and that was upon the rehearing. And from this review of the proceedings it is obvious that the court who pronounced the decrees of 1863 regarded and treated them as interlocutory, and not final, and, we think, properly.
Mrs. Jones was not represented by counsel when those decrees were pronounced. Mr. Graves does not appear to have been present, and indeed was not counsel for her to resist that motion. He died soon after the war. And Mr. Whitfield, as well as Mr. Graves, was engaged as counsel only to get a decree for the sale of the land, and *was as much William C. Jones’ counsel as hers. After that was attained, he regarded *280 himself as functus officio, and did not consider himself any longer counsel in the cause. Neither he nor Graves were ever counsel for the tenant for life, as against William C. Jones. They were counsel for them both, and for the other parties in a suit in which all concurred in the objects and purposes for which it was brought. This was a motion by the purchaser, made, it is true, in the same suit, but not as an original party to that suit, but only a quasi party as purchaser, and it was not made by either of the counsel who had been retained in that suit, but by an attorney, retained by W. C. Jones for the purpose; and it was in reference to a matter which was extraneous, and wholly collateral, to the design and objects of that suit, and involved new matter, antagonizing William C. Jones, in this new relation of purchaser, with the interests of the life tenant. It seems that Mr. Whitfield was told by Mr. Underwood, that he had been employed by the purchasers to make the application to the court, when he at once informed him that he was not counsel for the life tenant, and suggested to him the propriety and necessity of his giving her notice. He seems to have taken it for granted that the purchaser would proceed by petition, and that of course he would not proceed without notice to the life tenant. He was not then a resident of the state, and gave himself no concern about it, having informed the counsel of the purchaser that he was not counsel for the life tenant.
The life tenant, in her petition, denies on oath that she had notice of the proceeding; which put the purchaser on proof of the notice. She says she had no knowledge of said decrees until after the rendition of the decree of October, 1863, a short time before the tender to her by the commissioner under said decree; which tender she through her agent refused, and immediately directed counsel to take the necessary steps to remedy the wrong done her by *said decrees, but from which he was prevented by the pending of the war and the non-organization of the courts. Mr. Whitfield testifies that Mrs. Jones did apply to him to have the error corrected, and that he was about to file exceptions or a petition for her; he is not clear in his recollection which. His impression was for some time that it was at the October term, 1863, but was now inclined to think it was after October court. 1863. The last impression must be correct. Because it was the decree of October, 1863, that required Mrs. Jones to receive the Confederate States bonds, &c., which could not have been tendered to her until after that' decree, and it was most probably, as she avers, the tender of it to her by the commissioner that gave her the first notice of the decree, and of the proceeding against her. And very soon after that she applied to Mr. Whitfield to take such steps as was necessary to relieve her from the grievance. Arid of this he is positive, that whether it was to except to the report at the October term, 1863, or to file a petition after-wards, the opportunity for doing so was foiled for the reasons he had alleged, resulting from the state of public affairs, the country being then desolated by war, and the courts suspended.
In Berry v. Irick, 22 Gratt. 614, as in this case, the land was purchased by Irick at a judicial sale prior to the war. The sale was made under a decree of 1857, and the purchaser was allowed to retain one-third of the purchase money, the portion in which the widow had a life estate, paying the interest to her yearly. Whether this arrangement was by a provision in the decree, or by agreement of parties, did not appear. The record of the suit had been destroyed by fire by the enemy during the war. But this plan was carried out by the purchaser paying two-thirds of the installments of purchase money to the heirs, as they respectively fell due, and the interest on the remaining third to the widow, until the year 1862, when, without notice to *the widow and heirs, he obtained an order of the court authorizing him to pay the principal, and actually paid it to the receiver of the court, in obedience to its order, in Confederate currency. This court held that the widow and heirs, though parties to the suit, ought to have had notice of the creditor’s motion; and that the order directing the payment by the purchaser was void, and the same was set aside and annulled, and the purchaser and his surety were held liable for the same, and the land bound. In that case the widow and heirs did not proceed by petition, but by bill in chancery, to set aside said order. But in the subsequent case of Myers v. Nelson, 26 Gratt. 729, the proceeding was by rule, after the war ended, in the same suit against the purchaser for the purchase money which had been paid into the hands of the receiver of the court, in Confederate money, under an order or decree of the court of 1863, but which the party to whom it was due refused to receive; and that proceeding was sustained by this court. The decree of 1863, which directed payment by the purchaser to the general receiver, and a conveyance to him thereupon, and the payment which had been actually made in Confederate currency, and the deed which had been executed by the commissioner, were rescinded and annulled; and a decree was pronounced against the purchaser for the purchase money, as if the decree of 1863 had never been made and no payment had been made under it; and in case the purchaser failed to comply with the decree in the payment of the purchase money, the land was to be resold. Reference is also made to the case of Crickard’s ex’or v. Crickard’s legatees, 25 Gratt. 410, which is confirmatory of the foregoing views. Also Tosh & als. v. Robertson & al., 27 Gratt. 270.
That the court below did right to give leave to Purdie and wife to file their petition for a rehearing, and that there is error in the decrees of 1863 complained of, for which they should have been reversed and annulled, is established, *we think, by the cases above cited. The material allegations of the petition are sustained, for the most part, by the evidence of the recorded *281 proceeding. The affidavit of Whitfield was filed with the petition, which refers to it, for six or seven years prior to the final decree, and was relied on by the life tenant as testimony in her behalf. In the meantime, the death of Wm. E. B. Ruffin, the executor of Boling Jones, and the death of Wm. C. Jones, were suggested on the record at different terms of the court, and the cause was directed to proceed in the names of their respective representatives. Yet no answer has ever been made to said petition, though thcy had a right to answer it; and no exception was ever taken to the affidavit of Whitfield as testimony in the cause, and no testimony adduced by the party contesting the rehearing. The paper purporting to be the certificate of Mary Jones, the widow of Wm. C. Jones, found amongst the papers, not being on oath, and in no sense testimony, was not, it seems, considered by the court in its decree. But if it had been, it could not weigh as a feather against the evidence of the proceedings of record and the sworn testimony in the cause.
Upon the case as it is presented by the record, there is not a doubt upon the minds of the court as to the merits of the cause, or how it should be decided; and we do not think that after such delay, and the opportunities of those who resisted the rehearing to perfect their defence, that further time and opportunities should be allowed them to prepare their case and to keep alive this litigation, but that the matters in controversy should now be decided as they are presented by the record.
‘We are therefore of opinion to reverse the decrees of the circuit court of 1863 and of 30th of October, 1873, with costs, and to remand the cause for further proceedings to be had therein as are necessary to a final decree in conformity with the principles declared in this opinion.
*BURKS, J.,
thought that the case, as presented in the record, was for the appellants; but thought the case ought to be sent back to give the appellees an opportunity to make their defence to the petition for a rehearing by Purdie and wife.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the court below did not err in granting John R. Purdie and Henrietta, his wife, formerly Henrietta Jones, a rehearing of the decrees of 11th May and 37th October, 1863, and that said decrees were erroneous, and that said decree of 30th October is erroneous in not revising said decrees and annulling the same, and in dismissing the petition of said Purdie and wife for a rehearing. It is therefore ordered and decreed that the said decrees of 1863 and of 30th October, 1873, be reversed and annulled, and that the appellees, the personal representatives, and widow and heirs of Wm. C. Jones, pay to the appellants their costs expended in the prosecution of their appeal here. And this cause is remanded to the circuit court of Surry county for fur-
ther proceedings to be had therein, in order to a final determination of this controversy, in conformity with the principles declared in this order, and in the opinion filed with the record.
Decree reversed.